# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**EDDIE HENDERSON**                                                                         **PLAINTIFF**

**v.**                         **CIVIL ACTION NO. 2:18-CV-188-KS-MTP**

**JONES COUNTY SCHOOL DISTRICT**                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **denies** Defendant's Motion for Summary Judgment [136] and **denies as moot** Defendant's Motions to Strike [140, 143].

## I. BACKGROUND

This is an employment discrimination case. The Court has discussed its background in previous orders. *See Henderson v. Jones County Sch. Dist.*, 2020 WL 5222376 (S.D. Miss. Sept. 1, 2020); *Henderson v. Jones County Sch. Dist.*, 2021 WL 53174 (S.D. Miss. Jan. 6, 2021). Plaintiff, an African-American man, claims that his employer, the Jones County School District, fired him because of his race. Defendant filed a Motion for Summary Judgment [136], which the Court now addresses.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club,*

*Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

Plaintiff claims that Defendant fired him because of his race. He asserted a claim of racial discrimination under Title VII, the Constitution's Equal Protection Clause via Section 1983, and Section 1981 via Section 1983. The Court applies the

2

same analysis to each cause of action. *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 166 (5th Cir. 2007). First, Plaintiff carries "the initial burden of establishing a prima facia case of racial discrimination." *Whiting v. Jackson State Univ.*, 616 F.2d 116, 120 (5th Cir. 1980). If he does so, "the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action." *Ross v. Judson Ind. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021). If Defendant articulates a nondiscriminatory reason for the adverse employment action, "the burden shifts back to the plaintiff to prove that the reason is pretextual." *Id.*

### A. *Prima Facie Case*

To prove a prima facie case of discrimination, Plaintiff must show that 1) he belongs to a protected class, 2) he was qualified for his position, 3) he suffered an adverse employment action, and 4) a similarly situated employee outside his protected class was treated more favorably. *Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021).

#### 1. *Replaced by Someone Outside His Class*

First, Defendant argues that Plaintiff can not prove that he was replaced by someone outside of his protected class. Plaintiff presented a sworn declaration from Rita Maggiore. Exhibit A to Response [139-1]. Maggiore stated that she "worked for the Jones County School District when Eddie Henderson was an employee." *Id.* She said: "When Eddie Henderson was fired, he was eventually replaced by Jennifer Allred, who is white." *Id.* She clarified: "I initially did some of Eddie's job after he was

3

fired, but eventually Ms. Allred was hired and began doing all of Eddie's job duties except for signing purchase orders." *Id.* Indeed, the minutes from Defendant's Board provide that Allred "replac[ed] Eddie Henderson who was terminated." Exhibit A to Reply [145-1], at 5. This evidence creates a genuine dispute of material fact as to whether Plaintiff was replaced by someone outside his protected class.

*2. Treated Less Favorably*

Next, Defendant argues that Plaintiff can not prove that similarly situated employees outside his protected class were treated more favorably than he was. "To show that a fellow employee was similarly situated, a Title VII plaintiff must demonstrate that they were in 'nearly identical' circumstances. This inquiry is case-specific and requires us to consider the full variety of factors that an objectively reasonable decisionmaker would have found relevant in making the challenged decision." *Foster v. Ferrellgas, Inc.*, 834 F. App'x 88, 90 (5th Cir. 2020) (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001); *Lindquist v. City of Pasadena*, 669 F.3d 225, 234 (5th Cir. 2012)).

According to Defendant, it fired Plaintiff because he "had been using the District's computer for his personal use and had been stealing the District's time to do it." Memorandum in Support of Motion for Summary Judgment [137], at 10. Parker stated in his affidavit that after he found numerous files and other materials on Plaintiff's District-assigned computer that were not related to work, he "concluded that Eddie Henderson had committed an egregious violation of various policies in our

4

District's Personnel Handbook." Exhibit 2 to Motion for Summary Judgment [137-9], at 8. He "made the decision to terminate Eddie Henderson's employment" because of these alleged violations of District policy. *Id.*

Plaintiff presented evidence that Karen Mosely, a white employee, used her District-owned computer to print her son's schoolwork on District-owned printers. Exhibit A to Response [139-1]. Mosely also admitted that she uses Facebook on her District-owned cell phone. Exhibit J [139-10], at 5-6. Rita Maggiore admitted that she would "step outside" during the work day to receive rent from tenants. Exhibit E to Response [139-5], at 6. Maggiore also named numerous District employees who used the central office to ship and/or receive personal items. *Id.* at 10-11. She also admitted that another employee, Sarah Sumrall, sold t-shirts at the office to raise funds for a family member with cancer. *Id.* at 13. Finally, Defendant admitted in its interrogatory responses that a teacher's assistant and first grade teacher had used their work computers for personal business, but neither were terminated. *Id.* at 3-5.

In summary, Plaintiff has presented evidence that numerous District employees used District-owned equipment for personal reasons, and/or that they performed personal tasks while on the clock. It appears to be undisputed that at least some of these employees were white, and it also appears to be undisputed that none of the employees listed above – except for Plaintiff – were fired for these infractions. Therefore, the Court concludes that Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether similarly situated employees

outside his protected class were treated more favorably than he was.

Defendant argues that Plaintiff has not demonstrated that he was similarly situated to these other employees. Defendant contends that these other employees are distinguishable in numerous ways and, therefore, not nearly identical. However, according to Parker, the reason for Plaintiff's termination was not his history of alleged infractions or the quality of his work. Rather, Defendant asserted in briefing that it fired Plaintiff because he "had been using the District's computer for his personal use and had been stealing the District's time to do it." Memorandum in Support of Motion for Summary Judgment [137], at 10. Likewise, Parker cited Plaintiff's use of his work computer for personal tasks on school time as the reason for termination. Exhibit 2 to Motion for Summary Judgment [137-9], at 8. The record contains evidence that white employees violated the same District policies that Defendant claims prompted Plaintiff's termination, yet they were not fired. Therefore, the Court concludes that, at best, there is a genuine dispute of material fact as to whether Plaintiff was similarly situated to these other employees in ways that are relevant to Parker's decision to terminate Plaintiff's employment.

### 3. *Qualified for His Position*

Next, Defendant argues that Plaintiff was not qualified for his position. However, Defendant admitted in briefing that Plaintiff had approximately twelve years of experience in the purchasing department. Memorandum in Support of Motion for Summary Judgment [137], at 18. Moreover, although Parker states in his

affidavit that Plaintiff "lacked the requisite aptitude, skills, knowledge, and initiative to fulfill the job duties and responsibilities of his then position" as early as April 2017, Exhibit 2 to Motion for Summary Judgment [137-9], at 3, it is undisputed that Defendant continued to employ Plaintiff for almost another two years. Also, Parker did not cite Plaintiff's alleged lack of qualification as a reason for his termination. *Id.* at 8. Finally, Parker admitted that he had recommended that Defendant hire Plaintiff as a purchasing clerk in January 2013. *Id.* at 1. In the Court's opinion, this evidence creates a genuine dispute of material fact as to whether Plaintiff was qualified for his position.

### B. *Same Actor Inference*

Next, Defendant argues that it is entitled to the benefit of the "same actor inference." In numerous unpublished decisions, the Fifth Circuit has held that "[t]he same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421-22 (5th Cir. 2009). However, this "inference is not irrebuttable." *Id.* Nor is it conclusive on the question of discrimination.

"While evidence of such circumstances is relevant in determining whether discrimination occurred," the Fifth Circuit has "decline[d] to establish a rule that no inference of discrimination could arise under such circumstances. Instead, we prefer to look at the evidence as a whole, keeping in mind the ultimate issue: Whether [race]

7

was a determinative factor in the employment decision." *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996). Therefore, the fact that Parker hired Plaintiff is relevant, but it is not, by itself, determinative.

## C. *Preclusive Effect of the Administrative Action*

Defendant argues that Plaintiff's Section 1981 and 1983 claims of racial discrimination are barred because an administrative law judge at the Mississippi Department of Employment Security ("MDES") found that he was fired for misconduct. Generally, "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Cox v. Desoto County, Miss.*, 564 F.3d 745, 748 (5th Cir. 2009). "In Mississippi, administrative decisions," such as those by the MDES, may be "given preclusive effect." *Id.* For collateral estoppel to apply, four elements must be present: "The party must be seeking to re-litigate a certain issue, that issue must already have been litigated in a prior action, the issue must have been determined in the prior suit, and the determination of the issue must have been essential to the prior action." *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997). However, "state administrative decisions do not have preclusive effect as to claims for which Congress provided a detailed administrative remedy, such as Title VII . . . claims." *Johnson v. Miss. Power Co.*, 2014 WL 1153711, at *2 (S.D. Miss. Mar. 21, 2014); *see also Cox*, 564

8

F.3d at 749.

Among other things, the ALJ addressed "the reason for [Plaintiff's] separation from employment . . . ." Exhibit 2 to Motion for Summary Judgment [137-9], at 22. He found:

> The claimant placed incorrect information in advertisements delaying the bidding process and creating re-work, refused to follow instructions, refused to perform his job duties, ignored school district procedures when he issued purchase order number over the phone without researching the request, and violated policy by using his school computer for personal use. All of which violate the standards of behavior the employer has the right to expect.

*Id.* at 24. He concluded: "In this case the claimant's discharge did not result from one event but a series of events that when combined constituted misconduct connected with the work." *Id.*

The ALJ did not address the core question presented in this case, which is whether Defendant terminated Plaintiff because of his race. In fact, the issue of race does not appear in the ALJ's decision. Rather, the ALJ focused on Plaintiff's alleged misconduct. Although the ALJ found that Plaintiff's termination "did not result from one event but a series of events that when combined constituted misconduct connected with the work," he did not address whether Plaintiff's race was a motivating factor. Therefore, the Court finds that the ALJ's decision is not preclusive as to the racial discrimination claim presented in this case. *See Vaughn v. Starkville Manor Healthcare, LLC*, 2017 WL 1014368, at *4 (N.D. Miss. Mar. 14, 2017) (collateral estoppel did not apply in discrimination case because ALJ did not address

9

whether defendant discriminated against plaintiff).

### D. *Legitimate, Nondiscriminatory Reasons*

Defendant has proffered legitimate, nondiscriminatory reasons for firing Plaintiff. Specifically, Defendant claims 1) that Plaintiff's job performance began to decline in the spring of 2017, and continued to suffer throughout the rest of his employment; 2) that Plaintiff was insubordinate, hostile, and combative toward his supervisors; and 3) that Plaintiff violated the District's policies regarding use of District-owned computers for personal reasons while on the clock. Therefore, the burden shifts to Plaintiff to demonstrate that these reasons for his termination are pretextual.

### E. *Pretext*

To carry his burden at the final stage of the analysis, Plaintiff must provide "sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination . . . .; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).

First, Defendant cites Plaintiff's allegedly poor job performance beginning in the spring of 2017. As noted above, Parker stated in his affidavit that Plaintiff "lacked the requisite aptitude, skills, knowledge, and initiative to fulfill the job duties and responsibilities of his then position" as early as April 2017. Exhibit 2 to Motion for

Summary Judgment [137-9], at 3. However, it is undisputed that Defendant continued to employ Plaintiff for almost another two years, despite his allegedly poor job performance. Moreover, Parker did not cite Plaintiff's job performance as a reason for his termination. *Id.* at 8.

As noted above, Plaintiff may demonstrate pretext by offering evidence that Defendant's "proffered explanation is false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011). Based on the evidence cited above, a jury could reasonably conclude that Plaintiff's job performance was not the real reason he was fired.

Next, Defendant cites Plaintiff's insubordinate behavior. Plaintiff met with Parker in August 2018 to discuss his grievances surrounding a reprimand he received from Sarah Sumrall. *See* Exhibit B to Response [86]; Exhibit B to Response [139-2]. Parker told Plaintiff: "When you look at your career here, . . . I don't think you can say people kicked you around here. People like you. You've got a good personality. They really like your personality." Exhibit B to Response [86]. He acknowledged that if Plaintiff "didn't have a decent, nice personality, you'd have been somewhere else." *Id.* Moreover, Parker acknowledged that much of Plaintiff's conflict with Sarah Sumrall was because of her behavior. *Id.* Parker specifically acknowledged that he had reprimanded Sumrall about the "way she talks to people." *Id.* In fact, Parker said that "people out at the school" had called him and said that Sumrall was "hateful to [them] on the phone," and that "they call her the blonde bitch behind her back." *Id.*

11

It appears to be undisputed that none of these employees were fired for calling Sumrall "the blonde bitch," and that Sumrall was not fired for "the way she talks to people." Moreover, Defendant contends that Plaintiff had "difficulty getting along" with coworkers as early as June 2017, Memorandum in Support of Motion for Summary Judgment [137], yet Defendant continued to employ Plaintiff until March 2019. Viewing all of this evidence in the light most favorable to Plaintiff, a jury could conclude either that Plaintiff was not as insubordinate as Defendant claims, or that his insubordination was not the true reason for his termination.

Finally, Defendant cites Plaintiff's violations of the District's policies concerning personal use of District-owned computers and use of time while on the clock. As noted above, Plaintiff presented evidence that numerous white employees used District-owned equipment for personal reasons, and/or that they performed personal tasks while on the clock, and it appears to be undisputed that most of them were not terminated. Therefore, viewing the evidence in the light most favorable to Plaintiff, a jury could conclude that Plaintiff's violation of these District policies was not the true reason for his termination.

For all these reasons, the Court finds that Plaintiff has presented enough evidence to create a genuine dispute of material fact as to whether Defendant's proffered reasons for terminating him were pretext for discrimination.

### IV. CONCLUSION

For these reasons, the Court **denies** Defendant's Motion for Summary

Judgment [136]. The Court also **denies as moot** Defendant's Motions to Strike [140, 143], as the Court did not consider the disputed evidence when addressing Defendants' Motion for Summary Judgment [136].

SO ORDERED AND ADJUDGED this 23rd day of June, 2021.

                                                 /s/    Keith Starrett
                                              KEITH STARRETT
                                    UNITED STATES DISTRICT JUDGE