IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

EDDIE HENDERSON                                                    PLAINTIFF

v.                                        CIVIL ACTION NO. 2:18-CV-188-KS-MTP

JONES COUNTY SCHOOL DISTRICT                                       DEFENDANT


## MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **denies** Defendant's Motion for
Reconsideration [154] and **denies as moot** Defendant's Motion to Strike [164].

## I. BACKGROUND

The Court previously discussed the background of this case. *See Henderson v.
Jones County Sch. Dist.*, 2021 WL 2584010 (S.D. Miss. June 23, 2021); *Henderson v.
Jones County Sch. Dist.*, 2020 WL 5222376 (S.D. Miss. Sept. 1, 2020). On June 23,
2021, the Court entered a Memorandum Opinion and Order [153] denying
Defendant's Motion for Summary Judgment [136] as to Plaintiff's racial
discrimination claim. Defendant filed a Motion for Reconsideration [154], which the
Court now addresses.

## II. DISCUSSION

"Under Rule 54(b), the trial court is free to reconsider and reverse its decision
for any reason it deems sufficient, even in the absence of new evidence or an
intervening change in or clarification of the substantive law." *Six Dimensions, Inc. v.*

*Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020).

**A.    *Plaintiff's Evidence of Pretext***

First, Defendant argues that the Court "misapprehended" its purported reasons for terminating Plaintiff. Defendant contends that the Court mistakenly relieved Plaintiff of the obligation to rebut each alleged reason for his termination. Defendant is mistaken.

In the Court's previous opinion, it listed the three categories of reasons that Defendant articulated for terminating Plaintiff. *Henderson*, 2021 WL 2584010 at *5. As the Court previously noted, Defendant claims that it terminated Plaintiff because 1) his job performance began to decline in the spring of 2017, and continued to suffer throughout the rest of his employment; 2) he was insubordinate, hostile, and combative toward his supervisors; and 3) he violated the District's policies regarding use of District-owned computers for personal reasons while on the clock. *Id.*

The Court then noted that Plaintiff was required to provide "sufficient evidence to create a genuine dispute of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination . . . ; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Id.* (quoting *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005)). The Court then discussed Plaintiff's evidence regarding each reason articulated by Defendant.

**1.    *Poor Job Performance***

2

The Court observed that although Defendant claimed that Plaintiff's job performance suffered, it was undisputed that Defendant continued to employ Plaintiff for *two years* after his allegedly poor job performance began. *Id.* at *5 (citing Exhibit 2 [137-9], at 3). The Court also observed that Thomas Parker, Defendant's superintendent, stated in his affidavit that he fired Plaintiff because of his violation of the District's policy regarding use of school computers. *Id.* (citing Exhibit 2 [137-9], at 8). This evidence creates a genuine dispute of material fact as to whether Defendant fired Plaintiff for his allegedly poor job performance.

Defendant contends that it is not sufficient for Plaintiff to rebut the general assertion that his job performance suffered. Rather, Defendant argues that Plaintiff must rebut each specific example of poor job performance. Defendant has not, however, cited any binding precedent holding as much. Indeed, Defendant's own argument focused on broad categories of reasons, as articulated above. Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendant's specific examples of poor job performance were pretextual, and/or that Defendant was also motivated by racial discrimination.

Defendant also argues that the Court misrepresented Parker's testimony. Defendant notes Parker's assertion that he decided to fire Plaintiff "[b]ased on all of these facts and circumstances," arguing that this clause refers to everything in the eight pages preceding it, rather than just the circumstances regarding Plaintiff's alleged violation of District computer policies. The Court disagrees. The paragraph

provided, in relevant part:

> Based on all of these facts and circumstances, I concluded that Eddie Henderson had committed an egregious violation of various policies in our District's Personnel Handbook. Based on all of these facts and circumstances, I also concluded that Eddie Henderson had been violating the District's policy for approximately seven years. Based on all of these facts and circumstances, I made the decision to terminate Eddie Henderson's employment [with] the District . . . .

Exhibit 2 [137-9], at 8. All eight pages of affidavit preceding this paragraph did not relate to "an egregious violation of various policies in [the] District's Personnel Handbook" or Plaintiff's alleged "violating the District's policy for approximately seven years." *Id.* Therefore, a reasonable juror could interpret this paragraph as referring only to the "facts and circumstances" concerning Plaintiff's alleged misuse of District computers, rather than the totality of events throughout Plaintiff's employment, many of which had nothing to do with District policies.

### 2. Insubordination

With respect to Plaintiff's alleged insubordination, the Court noted a recorded conversation between Parker and Plaintiff that occurred after a grievance meeting. *Henderson*, 2021 WL 2584010 at *5 (citing Exhibit B to Response [86]). Parker told Plaintiff: "When you look at your career here, . . . I don't think you can say people kicked you around here. People like you. You've got a good personality. They really like your personality." Exhibit B to Response [86]. He acknowledged that if Plaintiff "didn't have a decent, nice personality, you'd have been somewhere else." *Id.* Parker acknowledged that much of Plaintiff's conflict with Sarah Sumrall was because of her

behavior. *Id.* Parker specifically acknowledged that he had reprimanded Sumrall about the "way she talks to people." *Id.* In fact, Parker said that "people out at the school" had called him and said that Sumrall was "hateful to [them] on the phone," and that "they call her the blonde bitch behind her back." *Id.* The Court observed that Sumrall had not been fired for "the way she talks to people." *Id.* Interpreting this evidence in the light most favorable to Plaintiff, it creates a genuine dispute of material fact as to whether Plaintiff was as insubordinate as Defendant claims, and/or as to whether he was actually fired for being insubordinate.

Defendant again argues that Plaintiff must rebut each and every specific example of insubordination cited by Defendant. The Court disagrees, for the same reasons provided above.

Defendant also argues that the Court erred in relying on the recording because it is not clear when the recording was made. That is, Defendant contends that there is no evidence that the recording was made after the alleged insubordination. Defendant is mistaken.

At the beginning of the recording, Parker stated that he wanted the parties attending the meeting to note the date – September 26. *Id.* The purpose of the meeting was to address a grievance that Plaintiff had filed in which he made allegations of discrimination. *Id.* Parker, Plaintiff, Karen Mosely, and Sarah Sumrall participated in the meeting. *Id.* It is clear from the recording, therefore, that this meeting occurred in September 2018, after Plaintiff received a disciplinary reprimand

from Sarah Sumrall in August 2018. *See* Exhibit A [137-1], at 67-68; Exhibit B [139-2]; Exhibit 2 [137-9], at 4. According to Defendant, Plaintiff displayed insubordination well before this meeting. *See, e.g.* Memorandum in Support of Motion for Summary Judgment [77], at 9; Exhibit P [85-16], at 1. Therefore, this objection to the recording is meritless.

Defendant also argues that the Court erred by relying on a statement in Henderson's sworn declaration that no employees were fired for calling Sumrall "the blonde bitch." Defendant is mistaken. The Court did not rely on Henderson's declaration. It relied on the recording just discussed. In the Court's opinion, a reasonable juror could believe that the manner in which Parker discusses both "the way [Sumrall] talks to people" and the way that other employees spoke of her casts doubt on Defendant's claim that it fired Plaintiff because of insubordination. In other words, a reasonable juror could believe that Parker was not actually concerned about insubordination, given his apparent lack of concern about Sumrall.

3.    *Use of School Computers*

Finally, with respect to Plaintiff's violation of certain District policies, the Court noted evidence that numerous white employees used District-owned equipment for personal reasons, and/or that they performed personal tasks while on the clock, and that it appeared to be undisputed that most of them were not terminated. *Henderson*, 2021 WL 2584010 at *2. This creates a genuine dispute of material fact as to whether Plaintiff's violation of the same policies was the real reason for his

6

termination.

Defendant argues that Plaintiff offered insufficient evidence to prove other employees who violated District policies were similarly situated. Defendant specifically notes that Plaintiff offered no evidence of other employees' infraction histories. "To show that a fellow employee was similarly situated, a Title VII plaintiff must demonstrate that they were in 'nearly identical' circumstances. This inquiry is case-specific and requires us to consider the full variety of factors that an objectively reasonable decisionmaker would have found relevant in making the challenged decision." *Foster v. Ferrellgas, Inc.*, 834 F. App'x 88, 90 (5th Cir. 2020) (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001); *Lindquist v. City of Pasadena*, 669 F.3d 225, 234 (5th Cir. 2012)). In other words, the comparators are not required to be "nearly identical" to Plaintiff in every way, but only in ways relevant to the challenged adverse employment decision.

As noted above, a reasonable juror could interpret Parker's affidavit testimony as implying that Plaintiff's alleged misuse of District computers and time were the only relevant factors in the decision to terminate his employment. Therefore, there exists a genuine dispute of material fact as to whether these other employees were "nearly identical" to Plaintiff in ways relevant to the challenged adverse employment decision.

Defendant also argues that Plaintiff offered no evidence that Parker knew about the other employees' violations of District policy. Defendant admitted in its

interrogatory responses – which were signed by Parker – that a teacher's assistant and first-grade teacher were caught misusing their District computers, but they were only reprimanded. Exhibit M [139-13], at 4. Additionally, the grievance that Plaintiff submitted to Parker in September 2018 specifically mentioned Patrick Robinson's use of District time for personal matters. Exhibit B to Response [86]. This evidence is sufficient to create a genuine dispute of material fact as to whether Parker knew about other employees violating District policies.

Finally, Defendant claims that the Court relied on Henderson's sworn declarations, which Defendant moved to strike for various reasons. Defendant is mistaken. The Court has not relied on Henderson's declarations. In addressing this issue, it has relied on Parker's affidavit, Rita Maggiore's declaration, Karen Mosely's deposition, Rita Maggiore's deposition, Defendant's responses to interrogatories, and the recording of the meeting in September 2018 to discuss Plaintiff's grievance.

**B.    *MDES Hearing***

Defendant also argues that the Court erred by finding that Plaintiff is not collaterally estopped from challenging its stated reason for his termination. Defendant argues that the Court should have granted preclusive effect to the decision of the Mississippi Department of Employment Security ("MDES").

Generally, "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same

preclusive effect to which it would be entitled in the State's courts." *Cox v. Desoto County, Miss.*, 564 F.3d 745, 748 (5th Cir. 2009). "In Mississippi, administrative decisions," such as those by the MDES, may be "given preclusive effect." *Id.* For collateral estoppel to apply, four elements must be present: "The party must be seeking to re-litigate a certain issue, that issue must already have been litigated in a prior action, the issue must have been determined in the prior suit, and the determination of the issue must have been essential to the prior action." *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997). However, "state administrative decisions do not have preclusive effect as to claims for which Congress provided a detailed administrative remedy, such as Title VII . . . claims." *Johnson v. Miss. Power Co.*, 2014 WL 1153711, at *2 (S.D. Miss. Mar. 21, 2014); *see also Cox*, 564 F.3d at 749.

Among other things, the ALJ addressed "the reason for [Plaintiff's] separation from employment . . . ." Exhibit 2 to Motion for Summary Judgment [137-9], at 22. He found:

> The claimant placed incorrect information in advertisements delaying the bidding process and creating re-work, refused to follow instructions, refused to perform his job duties, ignored school district procedures when he issued purchase order number over the phone without researching the request, and violated policy by using his school computer for personal use. All of which violate the standards of behavior the employer has the right to expect.

*Id.* at 24. He concluded: "In this case the claimant's discharge did not result from one event but a series of events that when combined constituted misconduct connected

9

with the work." *Id.*

First, "in a Title VII action, a prior state decision enjoys preclusive effect only if rendered or reviewed by a court; an administrative decision involving Title VII claims that is not reviewed by a state or federal court may not preclude a subsequent Title VII claim." *Johnson*, 2014 WL 1153711 at \*2 (quoting *Thomas v. La. Dep't of Social Servs.*, 406 F. App'x 890, 894-95 (5th Cir. 2010)). Defendant has not directed the Court to any evidence that the ALJ's decision was reviewed by a court. In fact, Parker admitted that Plaintiff did not appeal the decision to Circuit Court. Exhibit 2 [137-9], at 12. Therefore, the ALJ's findings can not preclude Plaintiff's subsequent Title VII employment discrimination claim.

As for Plaintiff's racial discrimination claim under §§ 1981 and 1983, the Court once again notes that the ALJ did not address the question presented by this case, which is whether Defendant terminated Plaintiff because of his race. *See Vaughn v. Starkville Manor Healthcare, LLC*, 2017 WL 1014368, at \*4 (N.D. Miss. Mar. 14, 2017) (collateral estoppel did not apply in discrimination case because ALJ did not address whether defendant discriminated against plaintiff); *Goley v. Elwood Staffing Inc.*, 2017 WL 4508883, at \*4 (S.D. Miss. Mar. 21, 2017) (employment security process not designed to resolve issues of discrimination under ADA).

The Court also notes that MDES's decisions are only granted preclusive effect "if supported by the evidence and in the absence of fraud." *Cox*, 564 F.3d at 748. The ALJ's decision includes no discussion of the specific evidence presented at the

10

hearing. Therefore, the Court has no idea whether his decision was supported by evidence. The rule of collateral estoppel "is neither mandatory nor mechanically applied," and "where there is room for suspicion regarding the reliability of those first fact findings," the Court should decline to grant them preclusive effect. *Marcum v. Miss. Valley Gas Co., Inc.*, 672 So. 2d 730, 733 (Miss. 1996). Based on the current record, it appears that the ALJ rubber-stamped every allegation made by Defendant, with little to no substantive deliberation or consideration of the evidence. The Court declines to decide the outcome of this case on such a record.

### III. MOTION TO STRIKE [165]

Defendant filed a Motion to Strike [164] Plaintiff's Response [163] to Defendant's Motion for Reconsideration [154]. Defendant argues that the Court should strike Plaintiff's entire response because Plaintiff made factual assertions without providing citations to record evidence. Alternatively, Defendant argues that the Court should strike certain sentences from the Response [163]. The Court denies the motion as moot because it did not consider the disputed factual assertions.

### IV. CONCLUSION

For these reasons, the Court **denies** Defendant's Motion for Reconsideration [154] and **denies** Defendant's Motion to Strike [164] **as moot**.

SO ORDERED AND ADJUDGED this 29th day of July, 2021.

                    /s/    Keith Starrett
                    KEITH STARRETT
                    UNITED STATES DISTRICT JUDGE

11